# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. James B. Clark III |
| v. | : | Mag. No. 20-12360 |
| JAE H. CHOI | : | **CRIMINAL COMPLAINT** |

I, Special Agent Vincent Flynn, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

**SEE ATTACHMENT A**

I further state that I am a Special Agent with Internal Revenue Service, Criminal Investigation, and that this complaint is based on the following facts:

**SEE ATTACHMENT B**

continued on the attached pages and made a part hereof.

_____
Special Agent Vincent Flynn
Internal Revenue Service, Criminal Investigation

Special Agent Vincent Flynn attested to this Complaint by telephone pursuant to Federal Rule of Criminal Procedure 4.1(b)(2)(A) on September 2, 2020 in New Jersey.

HONORABLE JAMES B. CLARK III
UNITED STATES MAGISTRATE JUDGE

_____
Signature of Judicial Officer

## ATTACHMENT A

### Counts One Through Three
### (Bank Fraud)

From at least in or around April 2020 through in or around August 2020, in Bergen County, in the District of New Jersey and elsewhere, defendant

## JAE H. CHOI

did knowingly and intentionally execute and attempt to execute a scheme and artifice to defraud one or more financial institutions, to wit: Lender 1, Lender 2, and Lender 3, the deposits of which are insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, and credits owned by and under the control of such financial institution by means of materially false and fraudulent pretenses, representations, and promises, each constituting a separate count of this Complaint.

| Count | Approximate Date | Description |
|---|---|---|
| 1 | April 3, 2020 | CHOI submitted an application on behalf of Smart Learning Inc. to Lender 1 for approximately $3,077,300.00 in PPP funds. |
| 2 | April 10, 2020 | CHOI submitted an application on behalf of The Homeschool Buyers Club Inc. to Lender 2 for approximately $2,990,957.50 in PPP funds. |
| 3 | April 23, 2020 | CHOI submitted an application on behalf of Educloud Inc. to Lender 3 for approximately $2,903,200 in PPP funds. |

In violation of Title 18, United States Code, Section 1344(2) and Section 2.

## Count Four
## (Money Laundering)

On or about May 4, 2020, in Bergen County, in the District of New Jersey and elsewhere, defendant

## JAE H. CHOI

did knowingly engage and attempt to engage in a monetary transaction by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a greater value than $10,000, that is, the transfer of approximately $291,000 of U.S. currency from a Smart Learning Inc. account at Bank 3 to a Title Company, such property having been derived from a specified unlawful activity, that is, bank fraud, in violation of Title 18, United States Code, Section 1344.

In violation of Title 18, United States Code, Section 1957 and Section 2.

## ATTACHMENT B

I, Vincent Flynn, am a Special Agent with the Internal Revenue Service, Criminal Investigation. Recently, I have been assigned to work with the U.S. Department of Justice and other law enforcement partners to investigate possible fraud associated with the stimulus and economic assistance programs created by the federal government in response to the COVID-19 program. I am fully familiar with the facts set forth herein based on my own investigation, my conversations with other law enforcement officers, and my review of reports, documents, and evidence. Where statements of others are related herein, they are related in substance and part. Because this complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know concerning this investigation. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

### Overview

1. Defendant CHOI used a variety of false statements to fraudulently obtain nearly $9 million in federal COVID-19 emergency relief funds meant for distressed small businesses. CHOI submitted applications on behalf of three different business entities to three different lenders that fabricated employees, manipulated bank records, and falsified a driver's license. He then used the proceeds to buy, among other things, a nearly one million-dollar residential home in Cresskill, New Jersey ("Cresskill Residence"), pay for approximately $30,000 in remodeling and other improvements, and to invest millions more in the stock market through an account held in the name of his spouse.

### Background

*The Paycheck Protection Program*

2. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

3. In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business. The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan

application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures are used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for a PPP loan must provide documentation showing their payroll expenses.

4. A PPP loan application must be processed by a participating lender. If a PPP loan application is approved, the participating lender funds the PPP loan using its own monies, which are 100% guaranteed by Small Business Administration ("SBA"). Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.

5. PPP loan proceeds must be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time after receiving the proceeds and uses a certain amount of the PPP loan proceeds on payroll expenses.

### *Relevant Entities and Individuals*

6. At various times relevant to this complaint:

   a. Defendant Jae H. Choi ("CHOI") was a resident of Cliffside Park, New Jersey.

   b. CHOI was associated with various corporate entities that were used to apply for PPP loans, as follows:

   i. Smart Learning Inc. ("Smart Learning") is a Delaware Corporation, which purports to provide educational services.

   ii. The Homeschool Buyers Club Inc. ("Homeschool Buyers Club") is a California Corporation, which purports to provide curriculums for homeschooling.

   iii. Educloud Inc. ("Educloud") is a New Jersey Corporation, which purports to provide educational services.

   c. Individual 1 was CHOI's spouse and was a resident of Cliffside Park, New Jersey.

   d. Individual 2 was CHOI's brother.

e.  Lender 1 is a financial institution insured by the Federal Deposit Insurance Corporation ("FDIC") headquartered in Saint Petersburg, Florida with additional locations in Florida.

f.  Lender 2 is a FDIC-insured financial institution headquartered in Los Angeles, California that has locations primarily in California.

g.  Lender 3 is a FDIC-insured financial institution headquartered in Logan, Utah that has locations throughout Utah.

## The Scheme to Defraud

7.  From in or around April 2020 through in or around August 2020, CHOI submitted, or caused to be submitted, fraudulent loan applications to approved lenders, including Lender 1, Lender, 2, and Lender 3, in order to obtain funds through the PPP.

8.  In connection with this fraud, CHOI submitted the following PPP loan applications to PPP lenders:

| Name of Business Applicant | Amount Approved | Lender | Approximate Application Date | Status |
|---|---|---|---|---|
| Smart Learning | $3,077,300.00 | Lender 1 | April 3, 2020 | Funded |
| Homeschool Buyers Club | $2,990,957.50 | Lender 2 | April 10, 2020 | Funded |
| Educloud | $2,903,200.00 | Lender 3 | April 23, 2020 | Funded |

### *Falsified Smart Learning Application to Lender 1*

9.  On or about April 3, 2020, CHOI submitted a PPP application to Lender 1 in the name of Smart Learning seeking a PPP loan in the amount of $3,077,300. The application was submitted in CHOI's name and listed CHOI as the owner of Smart Learning.

10. The PPP application submitted to Lender 1 stated that Smart Learning's average monthly payroll was $1,230,925 and that the company had 170 employees. As purported documentation of Smart Learning's payroll numbers, the PPP application included a payroll summary report listing the

purported employees and a purported Employer's Annual Federal Unemployment Tax Return (IRS Form 940) for 2019.

11. The Smart Learning PPP application to Lender 1 contained materially false and fraudulent information:

   a. The purported Form 940 provided to Lender 1 was falsified. It claimed that Smart Learning had paid employees $13,924,004.28 for 2019. Internal Revenue Service ("IRS") records indicate no tax filings—including no Form 940—were made for Smart Learning for 2019.

   b. As part of the application, CHOI provided falsified bank account records. CHOI provided purported January 2020 Smart Learning checking account records from a different financial institution ("Bank 1") falsely indicating an ending balance of approximately $685,000 and hundreds of thousands of dollars in payroll payments and other transactions. Records obtained from Bank 1 show that this account was not opened until on or about February 8, 2020 and that the largest balance the account held during February and March 2020 was approximately $25,000.

12. On or about April 20, 2020, CHOI emailed Lender 1 to falsely claim that he just told 150 of his Smart Learning employees that they were losing their jobs because the PPP loan had not yet come through, that he had "watched grown men and women crying," and that he sincerely hoped that the Lender 1 employee he was emailing "would never find [themselves] in this kind of situation."

13. Bank records show that upon receiving the full amount of PPP loan proceeds from Lender 1 into a Smart Learning account at Bank 1 on or about April 23, 2020, CHOI wired approximately $2,410,000 of the funds to an attorney trust account ("Trust Account") held in his name at another financial institution ("Bank 2") in two transactions on or about April 24, 2020 and May 6, 2020. Prior to the deposit of PPP funds, the Trust Account had a balance of less than $10,000. Choi transferred the remaining PPP loan proceeds of approximately $640,000 from Bank 1 to another Smart Learning bank account at yet another financial institution ("Bank 3").

### *Falsified Homeschool Buyers Club Application to Lender 2*

14. On or about April 10, 2020, CHOI submitted a PPP application to Lender 2 in the name of Homeschool Buyers Club seeking a PPP loan in the amount of $2,990,958. The application was submitted in CHOI's name and listed CHOI as the owner of Homeschool Buyers Club.

15. The PPP application submitted to Lender 2 stated that Homeschool Buyers Club's average monthly payroll was $1,196,383 and that the company had 150 employees. As purported documentation of Homeschool Buyers Club's payroll numbers, the PPP application included a payroll summary report listing its purported employees and its purported IRS Form 940 for 2019.

16. The Home School Buyers Club PPP application to Lender 2 contained materially false and fraudulent information:

   a. The purported Form 940 provided to Lender 2 was falsified. It claimed that Homeschool Buyers Club had paid employees $13,924,004.28 for 2019 (identical to that claimed for Smart Learning). The real Form 940 that Homeschool Buyers Club filed with the IRS for 2019 states that the total payment for all employees was approximately $610,000.

   b. As part of the application, CHOI provided social security numbers and names for 182 employees, along with other information. According to records maintained by the United States Social Security Administration ("SSA"), only eleven of those individuals' names matched the social security numbers provided. And for those eleven individuals, the wages provided to Lender 2 as part of the PPP application were higher than those reported to the SSA by Homeschool Buyers Club for the same period.

   c. As part of the application, CHOI provided social security numbers and names for 167 contractors, along with other information. According to SSA records, only one of those individuals' names matched the social security numbers provided. Many of the social security numbers provided by CHOI for employees in the PPP application to Lender 2 were the same numbers provided for contractors, but were associated with different names.

   d. According to SSA records, for dozens of social security numbers provided by CHOI to Lender 2, the true holder of the social security number is deceased.

17. Bank records show that upon receiving the PPP loan proceeds in the amount of $2,990,957.50 from Lender 2 into a Homeschool Buyers Club account at Lender 2 on or about May 12, 2020, CHOI wired $2,990,000 to the Trust Account in two separate transactions on or about May 14, 2020 and June 8, 2020.

### *Falsified Educloud Application to Lender 3*

18. On or about April 23, 2020, Lender 3 received a PPP application in the name of Educloud seeking a PPP loan in the amount of $2,903,200. The application was submitted in Individual 2's name.

19. The PPP application submitted to Lender 3 stated that Educloud's average monthly payroll was $1,161,280 and that the company had 150 employees. As purported documentation of Educloud's payroll numbers, the PPP application included a payroll summary report listing the purported employees and a purported IRS Form 940 for 2019.

20. The Educloud PPP application to Lender 3 contained materially false and fraudulent information:

   a. The purported Form 940 provided to Lender 3 was falsified. It claimed that Educloud had paid employees $13,924,004.28 for that year (identical to that claimed for Smart Learning and for the Homeschool Buyers Club). IRS records indicate no tax filings—including no Form 940—were made for Educloud for 2019.

   b. The driver's license provided to Lender 3 for verification of Individual 2's identity was a falsified copy of CHOI's New Jersey driver's license—both the name and date of birth had been altered from CHOI's to Individual 2's.

21. Bank records show that after receiving the full amount of PPP loan proceeds from Lender 3 into an Educloud account at Bank 1 on or about May 5, 2020, CHOI wired approximately $2,902,000 of the proceeds to the Trust Account on or about May 6, 2020.

### *Use of PPP Loan Proceeds*

22. Bank records show that upon receiving the PPP proceeds from Lender 1, Lender 2, and Lender 3, CHOI used the proceeds for, among other things, to purchase the Cresskill Residence for approximately $970,000, to pay approximately $30,000 in improvements to the Cresskill Residence, and to deposit approximately $3 million into the personal investment account of Individual 1 held at an electronic third party broker ("Investment Account").

   a. On or about May 4, 2020, CHOI transferred approximately $291,000 of the $640,000 Lender 1 PPP loan proceeds previously sent to the Smart Learning account at Bank 3 to a title company located in Cinnaminson, New Jersey ("Title Company") to purchase the Cresskill Residence. In addition, between on or about May 15, 2020 and on or about May 22, 2020 CHOI transferred approximately

$950,000 from the Trust Account to an account at Bank 2 held in the name of another company controlled by Individual 1 ("Company Account"). To complete the purchase of the Cresskill Residence, on or about May 22, 2020, approximately $300,000 of the Company Account funds, and on or about May 26, 2020, approximately $387,748.45 of the Company Account funds, were transferred in two wire transactions to the Title Company.

b. Between on or about May 13, 2020 and on or about June 26, 2020, CHOI used PPP loan proceeds from the Trust Account and the Company Account to pay approximately $16,000 in architect fees. And, on or about June 29, 2020, CHOI used approximately $2,250 from the Company Account to pay for landscaping design for the Cresskill Residence. Finally, on or about July 14, 2020, CHOI used approximately $12,000 from the Company Account to pay for remodeling costs for the Cresskill Residence.

c. Between on or about May 14, 2020 and on or about June 10, 2020, CHOI transferred approximately $2.7 million from the Trust Account to Individual 1's account at Bank 2. Approximately $2.5 million of these proceeds from Lender 1, Lender 2, and Lender 3 PPP loans, were sent to the Investment Account between on or about May 15, 2020 and on or about June 10, 2020. In addition, between on or about May 19, 2020 and on or about June 10, 2020, CHOI transferred approximately $1.3 million from the Trust Account to Individual 1's account at Bank 3, and approximately $450,000 of these proceeds from Lender 1, Lender 2, and Lender 3 PPP loans, were sent to the Investment Account between on or about June 11, 2020 and on or about June 22, 2020. Approximately $2.6 million in the Investment Account was then invested in various stocks, including Amazon, Tesla, and Apple.